DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Highland County Court judgment of conviction and sentence. The trial court found Joseph A. Sova, defendant below and appellant herein, guilty of theft, in violation of R.C. 2913.02(A)(1).
 {¶ 2} Appellant raises the following assignments of error:
First Assignment of Error:
"The Trial Court erred to the prejudice of the Defendant-Appellant in overruling his rule 29 motion at the close of the State's case in chief."
Second Assignment of Error:
"The Trial Court erred to the prejudice of the defendant-appellant in overruling his rule 29 motion after closing arguments."
Third Assignment of Error:
"The Court Erred in finding defendant guilty where the evidence was not sufficient to meet the elements of the offense and where the subsequent finding of guilty was contrary to the sufficiency of the evidence, all in violation of due process of law guaranteed by the Fifth and Fourteenth amendments to the United States Constitution."
Fourth Assignment of Error:
"The finding of guilty was against the manifest weight of the evidence."
 {¶ 3} On March 13, 2002, Alicia Wheeler asked her neighbor, Leah Cline, if she could keep her Rottweiler puppy in the Clines' fenced-in backyard during the day on March 14, 2002. The Wheelers had recently acquired the puppy and had not yet installed a fence. Cline acquiesced and Wheeler took her puppy to the Clines' yard the next morning.
 {¶ 4} Cline stated that the puppy barked all morning, but at some point the barking stopped. When she looked outside, the puppy was gone. She called Wheeler at work to inform her that the puppy was missing. Eventually, the puppy was located at appellant's residence.
 {¶ 5} On March 14, 2002, Greenfield Police Officer Nicholas Oyer filed a complaint charging appellant with theft, in violation of R.C. 2913.02(A)(1). At trial, conflicting evidence was presented as to whether the puppy escaped from the yard or whether someone entered the yard and took the puppy. Wheeler testified that around 7:50 a.m. on March 14, 2002, she walked her puppy to the Clines' back yard. She explained that she wished to keep her dog at the Clines' because her yard did not have adequate fencing and because she was afraid that someone would walk in her yard and take the puppy. Wheeler stated that she chained the puppy on an airline cable and fastened the collar to the airline cable. She explained that the collar "was pretty tight. The norm was no more than two fingers and I could not even fit one finger under there when I did tighten her to the airline cable." After she secured the puppy, she latched the fence gate. She stated that unlatching the gate requires the use of two hands.
 {¶ 6} Wheeler related that while she was at work, Cline called her and told her that the puppy was missing. When she returned to the neighborhood, she spoke with some construction workers who she had earlier noticed when she left for work. After speaking with the construction workers, she went into the back yard to see if the puppy "got out on her own." She stated that the gate was unlatched and was leaning against the fence and that the airline cable and the puppy's collar were still in the yard, but the collar had been unfastened. She then called the police. After she called the police, she talked to some neighbors and learned that the puppy had been seen with appellant and Dustin Beechler.
 {¶ 7} Cline testified that Wheeler tied the puppy on a tree stump that had a branch. She stated that when she went into the back yard after noticing that the puppy was missing, the collar was laying on the ground and she thought that it was still closed. She further explained that the gate on her fence has a four to five inch gap.
 {¶ 8} Officer Oyer stated that at approximately 11:44 a.m., he arrived in the neighborhood to investigate the missing puppy. He went into the Clines' backyard and saw the collar and airline cable laying on the ground, but he could not tell if the collar had been unfastened. He stated that it was laying in a circle. After speaking with some neighbors, he learned that appellant and Beechler had been in the neighborhood and were seen with the puppy. He then went to their residence and located the puppy tied up in the back yard. Appellant and Beechler told the officer that the puppy followed them home. Officer Oyer stated that he then returned to the Clines' back yard and examined the area and concluded that the puppy could not have escaped on its own.
 {¶ 9} In his defense, appellant presented the testimony of several witnesses who stated that they had seen appellant and Beechler with the puppy, but that the puppy was following them. Jeff Beechler, Dustin Beechler's brother, stated that he heard appellant and Beechler tell the dog to go away.
 {¶ 10} Both appellant and Dustin Beechler stated that the puppy started following them and eventually followed them home. When they arrived home, they sat on the front porch for a few minutes and discussed finding the owner. Then, so the dog would not be hit by a car, they chained the dog in the back yard and went inside to shower. After showering, they stated that they intended to try to find the owner. Instead, Officer Oyer and Mr. Wheeler arrived at the residence and found the puppy. Both appellant and Dustin denied that they entered the Clines' yard and took the puppy.
 {¶ 11} Mr. Wheeler stated that when he arrived at appellant's residence, appellant told him that the puppy did not belong to Mr. Wheeler and that he and Dustin found the dog. Mr. Wheeler testified that he thought he heard appellant state that he bought the dog.
 {¶ 12} After hearing all of the evidence, the trial court found appellant guilty. The trial court specifically found Ms. Wheeler's testimony to be credible. The court found that: (1) she secured the puppy in the Clines' back yard with a strong cable; (2) she fastened the collar tightly; (3) to release the collar would require someone to push the release; (4) the gates in the back yard were secured; (5) when Ms. Wheeler returned to the yard, one of the latches on the gate was not secured; and (6) the collar was unfastened. The judge stated that he was "convinced beyond a reasonable doubt that someone entered that yard, undid the collar, and removed the dog from the yard, not bothering to latch the gate on the way back out."
 {¶ 13} The court further found that appellant did not attempt to locate the owner of the puppy and that he did not call the police or the animal shelter to report that he had found a puppy. The court also stated that it was troubled by appellant's statement to Mr. Wheeler that the puppy was not his. The court noted: "[W]hy is an individual so concerned about denying that it is anybody in particular's dog when he has no idea whose dog it is."
 {¶ 14} The trial court sentenced appellant to ten days in jail and imposed a $1,000 fine, but the court conditionally suspended the jail time and $975 of the fine. Appellant filed a timely notice of appeal.
 {¶ 15} In his four assignments of error, appellant asserts that the record does not contain sufficient evidence to support his conviction and that his conviction is against the manifest weight of the evidence. Appellant argues that the evidence does not show that he took the puppy from the yard. He contends that his presence in the area from which the puppy was reported missing and his subsequent tying up of the puppy in his yard does not show that he stole the puppy. Appellant claims that the puppy started to follow him and that he, not knowing to whom the puppy belonged, took it home and tied it up so that it would not be hit by a car.
 {¶ 16} When reviewing the sufficiency of the evidence, our inquiry focuses primarily upon the adequacy of the evidence; that is, whether the evidence, if believed, reasonably could support a finding of guilt beyond a reasonable doubt. See State v.Thompkins (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541
(stating that "sufficiency is the test of adequacy"); State v.Jenks (1991), 61 Ohio St.3d 259, 273, 574 N.E.2d 492. The standard of review is whether, after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. See State v. Issa (2001), 93 Ohio St.3d 49,66, 752 N.E.2d 904 (citing Jackson v. Virginia (1979),443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560; Jenks,61 Ohio St.3d at 273). Furthermore, a reviewing court is not to assess "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction."Thompkins, 78 Ohio St.3d at 390, 678 N.E.2d 541 (Cook, J., concurring). Reviewing courts will not overturn convictions on sufficiency of evidence claims unless reasonable minds could not reach the conclusion reached by the trier of fact. See State v.Tibbetts (2001), 92 Ohio St.3d 146, 749 N.E.2d 226; State v.Treesh (2001), 90 Ohio St.3d 460, 739 N.E.2d 749.
 {¶ 17} On the other hand, when an appellate court considers a claim that a conviction is against the manifest weight of the evidence, the court must dutifully examine the entire record, weigh the evidence and consider the credibility of witnesses, while bearing in mind that credibility generally is an issue for the trier of fact to resolve. See Issa, 93 Ohio St.3d at 67;State v. Thomas (1982), 70 Ohio St.2d 79, 80, 434 N.E.2d 1356;State v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus. Once the reviewing court finishes its examination, the court may reverse the judgment of conviction only if it appears that the fact finder, in resolving conflicts in evidence, "`clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" Thompkins, 78 Ohio St.3d at 387 (quotingState v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717). If the state presented substantial evidence upon which the trier of fact reasonably could conclude, beyond a reasonable doubt, that the essential elements of the offense had been established, the judgment of conviction is not against the manifest weight of the evidence. See State v. Eley (1978),56 Ohio St.2d 169, 383 N.E.2d 132, syllabus.
 {¶ 18} After our review of the case at bar, we believe that (1) the record contains sufficient evidence to support appellant's conviction; and (2) the prosecution presented substantial, competent and credible evidence to establish the essential elements of the offense and, thus, appellant's conviction is not against the manifest weight of the evidence.
 {¶ 19} R.C. 2913.02 sets forth the essential elements of a theft offense: "(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * * (1) Without the consent of the owner or person authorized to give consent."
 {¶ 20} Appellant argues, in essence, that the record fails to show that he possessed a criminal intent. Appellant asserts that the evidence does not demonstrate that he took the puppy from the Clines' back yard, but instead shows that the puppy followed him home. We disagree.
 {¶ 21} The trial court explicitly found Ms. Wheeler's testimony credible. She stated that she secured the puppy's collar and that she properly latched the gate. Thus, her testimony shows that someone must have taken the puppy from the back yard.
 {¶ 22} Next, the circumstantial evidence establishes that appellant was the person who took the puppy from the yard. Appellant was observed in the area around the time that the puppy was reported missing, he was later seen with the puppy and the puppy eventually was found at his home.
 {¶ 23} Thus, the foregoing evidence, which the trial court found credible, sufficiently demonstrates that appellant committed the theft offense. Moreover, we do not believe that the fact-finder committed such a manifest miscarriage of justice that we must reverse appellant's conviction. The evidence that the trial court found to be credible establishes the essential elements of the offense. While the evidence may be less than overwhelming, it satisfies the applicable standards.
 {¶ 24} Moreover, we recognize that some evidence exists that the puppy simply followed appellant home. The trial court, however, discounted the evidence. As we stated above, issues regarding credibility are reserved to the fact-finder.
 {¶ 25} Accordingly, based upon the foregoing reasons, we overrule all of appellant's assignments of error and affirm the trial court's judgment.
Judgment Affirmed.
Harsha, J., concurs in Judgment Opinion
Evans, J., concurs in Judgment Only